Hugh CRAIG, Plaintiff-Appellant,

v.

ERA MARK FIVE REALTORS, et al.,
Defendants-Appellees.

No. 06A01–8610–CV–285.

Court of Appeals of Indiana,
First District.

July 9, 1987.

James E. Ayers, Gregory H. Miller, Wernle, Ristine & Ayers, Crawfordsville, for plaintiff-appellant.

Peter G. Tamulonis, John B. Drummy, Richard A. Young, Kightlinger & Gray, Indianapolis, for defendants-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Hugh Craig appeals a negative judgment after a bench trial in a suit against the defendants for fraud and an adverse summary judgment on a malpractice claim. We affirm.

## FACTS

The facts most favorable to the judgment reveal that on December 15, 1982, Hugh Craig agreed to purchase from Steve Raquet real estate in Indianapolis. The property consisted of a two story structure which had been converted into a multi-family dwelling. As part of the purchase price of $19,000, Craig agreed to assume and accept assignment of an installment land contract entered into by a vendor and Raquet's predecessor in interest on January 4, 1980. The land contract provided for monthly payments of $175 at 10% interest. The contract also contained a "balloon payment" clause providing that the balance be paid in full by January 4, 1985. A one year extension to the five year period was guaranteed to permit refinancing.

Prior to Craig's agreement to buy the property, Raquet met with David Strauser of ERA Mark Five Realtors (ERA) about listing the property for sale. Raquet told Strauser about the land contract but did not inform him of the balloon payment clause. Although Strauser requested a copy of the land contract, he did not receive a copy of it until either the day before or the day of closing with Craig.

On December 15, 1982, Albert Clark, an ERA employee, showed the property to Craig. Immediately afterwards, Craig and Clark filled out a purchase agreement. They then went to ERA's office where Strauser reviewed the proposed agreement. Craig asked to see the land contract but Strauser and Clark were unable to find it. Craig was told that the land contract entailed monthly payments of $175 at 10% interest. The length of the contract's term was not discussed. When Strauser called Raquet and notified him of Craig's offer, Raquet acquiesced and authorized Strauser to sign the purchase agreement. A typed purchase agreement was signed by Strauser on Raquet's behalf.

On December 23, 1982, the closing was conducted at ERA's offices. Present at the closing were Craig, Craig's wife, Clark, Strauser, Raquet, and a closing agent for the title company. During closing, Strauser reviewed the land contract for the first

time. Strauser found the balloon payment provision and immediately informed the Craigs. At this point, no money had exchanged hands (other than a $400 earnest money deposit which Craig paid to ERA) and no money had been disbursed to Raquet. Also, not all of the closing documents had been signed. Both Clark and Strauser informed Craig that he did not have to go through with the closing. No one told Craig that he had to go through with the transaction.

After Strauser and Clark explained the balloon payment provision, Craig said "that [it] didn't make any difference, I'll have it paid for by that time anyway." Record at 521. Craig later told Raquet that, even with the balloon payment, he still felt he got a good deal. On the date of closing, Craig took possession of the property.

In February of 1985, Wendall Daniel, inspector for the City of Indianapolis, Dept. of Metropolitan Development, Division of Developmental Services, informed Craig that an inspection of the property revealed the use of the dwelling as a multiple-family dwelling and that such use violated Marion County's Dwelling District Zoning Ordinance. Official notices were sent later. After receiving notice, Craig informed Daniel that the property had been used as an apartment building for a long time. Although Daniel asked Craig to submit proof of this, Craig never forwarded such proof. Furthermore, Craig never applied for a zoning variance despite being encouraged by the Department to do so. Neither has he attempted to cancel nor rescind the original land contract which represented that there were no existing zoning violations. The last tenant moved out in November of 1985. Since then, the property has been boarded up. Craig has not attempted to sell the house. No one at ERA knew of the property's zoning classification prior to or at the closing. No one at ERA made any representations to Craig regarding the specific zoning of the property.

On April 17, 1984, Craig filed suit alleging that Clark and Strauser, as real estate brokers employed by ERA, had misrepresented the terms of the installment land contract. On April 4, 1986, Craig filed an amended complaint which incorporated the original complaint as Count I. Count II alleged that the defendants represented the real estate as properly zoned. The defendants filed a motion for partial summary judgment, alleging that the negligence allegations in Count II were barred by the two year statute of limitations. The trial court granted the defendants' motion, holding that Craig could still pursue Count II under the theory of fraud.

After a bench trial, the trial court made special findings of fact and conclusions of law pursuant to Craig's request. On August 28, 1986, the court found for the defendants in all respects. Thereafter, Craig perfected this appeal.

## ISSUES

Restated, the issues are as follows:

1. Whether the plaintiff to his detriment relied upon any possible misrepresentations made by the defendants about the balloon payment.

2. Whether the defendants committed actual fraud when they made no representations concerning zoning.

3. Whether the accessibility of zoning as a public record precluded an action based upon constructive fraud.

4. Whether the plaintiff's allegation under Count II for negligence were barred by the statute of limitations.

## DISCUSSION AND DECISION

At the outset, we note that since this was a bench trial and the court made findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. Indiana Rules of Procedure, Trial Rule 52(A). In determining whether the findings and judgment are clearly erroneous, our court will neither reweigh the evidence nor judge the credibility of witnesses. *Mishawaka Brass Mfg., Inc. v. Milwaukee Valve Co.* (1983), Ind. App., 444 N.E.2d 855, 857, *trans. denied.* We consider only the evidence in the record which supports the judgment along with the reasonable inferences which can be

drawn therefrom. *Id.* We will disturb the trial court's findings only if the record is devoid of facts or inferences supporting the findings. *Id.*

*Issue One*

 In Count I of Craig's complaint, he alleged actual and constructive fraud. One of the essential elements for both kinds of fraud is detrimental reliance. *First National Bank v. Acra* (1984), Ind. App., 462 N.E.2d 1345, 1348; *Eby v. York Division, Borg Warner* (1983), Ind.App., 455 N.E.2d 623, 628; *American Independent Management Systems, Inc. v. McDaniel* (1982), Ind.App., 443 N.E.2d 98, 100. In the present case, there was no detrimental reliance. Craig learned of the land contract's balloon payment provision prior to the closing's completion. There was evidence in the record that Strauser and Clark both told Craig that he could back out of the deal. However, Craig went ahead with the closing, saying that he would have the transaction paid off before the land contract's balloon payment became due. Craig never exhibited any indications that he was not satisfied with the terms of the deal. Therefore, he cannot now claim that he relied to his detriment upon alleged misrepresentations made by ERA's brokers. Thus, the trial court did not err in denying Craig's claims under Count I.

*Issue Two*

Craig argues that ERA committed actual fraud by misrepresenting the zoning status of the property. Craig bases his claim upon ERA's representations that the property was a five unit apartment building. Craig also directs our attention to the listing agreement and multiple-listing worksheet which described the property as "multi-family". Craig alleges that these representations constituted actual fraud.

 The trial court found that the defendants never made any misrepresentations concerning the specific zoning classification. This finding wholly is supported by the record. Clark, Strauser, and Craig himself testified that nothing was ever said about zoning. The mere fact that the defendants represented the property as an apartment building does not rise to the level of an affirmative representation that the use of the property was permissible under the applicable zoning ordinance. Furthermore, there was evidence that the usage of the term "multi-family" in listing documents has nothing to do with zoning; it merely is used by realtors to distinguish such property from single family and condominium properties. Viewing, as we must, only the evidence in the record which supports the judgment, we are unable to say that the record is devoid of facts or inferences supporting the trial court's findings that no representations were made to the Craigs about zoning. Thus, the findings and judgment are not clearly erroneous.

*Issue Three*

Craig also argues that ERA was guilty of constructive fraud in its representations about zoning. There is some evidence in the record that Albert Clark of ERA agreed to act as Craig's agent in the transaction, thus creating a fiduciary relationship. From this, Craig alleges that Clark should have discerned on Craig's behalf whether the property was zoned properly for use as an apartment building.

 Assuming for the moment that Clark did consent to act on Craig's behalf, we still hold the defendants not liable. In *Winstead v. First National Bank N.A.* (1986), Tenn.App., 709 S.W.2d 627, the owners of an appliance business conferred with a real estate agent about buying suitable property for their business. The realtor suggested a tract located within a residential subdivision and produced a letter from the city confirming that the property was commercially zoned. The business owners purchased the land. The title was conveyed subject to all restrictions, easements, and covenants of record, and subject to zoning ordinances. Subsequently, the buyers discovered that the property could not be used for commercial purposes because of subdivision restrictions running with the land. The buyers sued their lawyer, the realtor, and the seller's lawyer,

among others. As to the claim against the realtor, the court opined as follows:

"There was proof that when the matter of restrictions arose for discussion, [the realtor], in an apparent reference to the *zoning* clearance, said: 'That's been taken care of, that matter has been taken care of.' [The realtor] testified that she did not know at the time of the closing of the subdivision restrictions or that there was any reason why the property could not be used for business purposes, but she was of the opinion that the prior problems had been resolved by commercial zoning of the property. Although it is apparent that [the realtor] was anxious to close the sale and that she may not have fully served the interests of her clients in this transaction, the fact remains that the [buyers] had an attorney who was fully informed not only by [the seller's attorney] but by his own examination of the title file, and the exclamations of [the realtor] do not rise to the level of fraud, misrepresentation, or concealment."

*Id.* at 633–34 (emphasis in original). The court particularly stressed that the information regarding the subdivision restrictions was readily available and easily accessible to all the parties. *Id.* at 631, 633. Thus, "if a purchaser of real property has notice or with ordinary diligence should have had notice of a problem with the real estate, the purchaser cannot attack the validity of the contract for fraud, misrepresentation, or concealment of that problem." *Id.* at 631. *See also O'Brien v. Noble* (1982), 106 Ill.App.3d 126, 61 Ill.Dec. 857, 435 N.E.2d 554 (broker not liable for negligent misrepresentation since zoning matters are of public record and equally accessible to all; liable only if misrepresents facts within his exclusive knowledge).

In the present case, the zoning of the property was a matter of public record. Craig had easy access to the information. It also should be noted that the Craigs were not inexperienced amateurs in the real estate business. Prior to this transaction, the Craigs had purchased a duplex and a commercial building. Mr. Craig devoted his full-time efforts to managing their properties. Both of the Craigs have been licensed by the State of Indiana to sell real estate since the mid 1970's. Mr. Craig is or was vice-president of Adobe Realty. At one time, he owned and operated a real estate school. Thus, although the Craigs were not represented by an attorney at the closing, they certainly possessed the skill and knowledge about ascertaining the property's zoning. This definitely is not a case where a dominant party used a special relationship to injure, even inadvertently, a weaker party. *See Sanders v. Townsend* (1987), 509 N.E.2d 860. Because of Craig's skill, he was not in a weak position. Therefore, even if we were to accept as true Craig's allegation that Clark agreed to act as his agent, the constructive fraud argument still must fail.[1]

*Issue Four*

Craig argues that the trial court erred when it granted ERA's motion for partial summary judgment. In Count II of Craig's amended complaint, Craig alleged *inter alia*, that ERA failed to determine that the property was not in compliance with zoning restrictions. ERA moved for partial summary judgment, claiming that any cause of action was barred by the statute of limitations. The trial court found that the "statute of limitations as to a negligence action is two (2) years." Record at 104. The court concluded that Craig's allegations in Count II concerning negligence were "filed more than two (2) years after the right of action arose and thus fails to comply with the statute of limitations regarding negligence." *Id.*

Craig alleges that a statute of limitations longer than two years is applicable. Craig argues that the six year statute of limitations found in Indiana Code section 34-1-2-1 applies to the facts of the present case. That statute provides for actions for "use, rents, and profits of real property." Alter-

1. Due to our disposition of the constructive fraud issue, we need not consider Craig's argument that the trial court erred by finding that constructive fraud is an equitable, not a legal, remedy.

natively, Craig argues that Indiana Code section 34–1–2–3 applies. That statute provides, "All actions not limited by any other statute shall be brought within ten [10] years...."

ERA claims that the appropriate statute is Indiana Code section 34–1–2–2(1) which provides a two year statute of limitations "[f]or injuries to person or character, for *injuries to personal property,* and for a forfeiture of penalty given by statute...." (Emphasis added). This is apparently the statute relied upon by the trial court.[2] Although we were unable to ascertain any Indiana cases which discuss the appropriate statute of limitations for a real estate broker's negligence, Indiana courts frequently have applied Ind. Code § 34–1–2–2(1) to actions for legal malpractice. *Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281 (beneficiary's claim of legal malpractice for negligent preparation of a will was action for injuries to personal property); *Lambert v. Stark* (1985), Ind. App., 484 N.E.2d 630 (lawyer malpractice resulting in denial of bankruptcy discharge was governed by I.C. 34–1–2–2(1)), *trans. denied; Keystone Distribution Park v. Kennerk, Dumas, Burke, Backs, Long, and Salin* (1984), Ind.App., 461 N.E.2d 749 (lawyer malpractice concerning an economic development bond issue was action for injuries to personal property), *trans. denied; Apple v. Hall* (1980), Ind.App., 412 N.E.2d 114 (action for attorney malpractice for simultaneously representing adverse interests governed by I.C. 34–1–2–2(1)). In these cases, the courts emphasized that the nature or substance of the cause of action, rather than the form of the action, determines the applicable statute of limitations. Speaking to attorney malpractice suits, our court held, "Most acts of attorney malpractice involve negligence or injury to a chose in action; thus attorney malpractice complaints fall under the two year statute." *Lambert,* at 632.

■ We are persuaded by these cases that the same statute of limitations should apply to actions against real estate brokers for negligence. Looking at the nature or substance of Craig's allegations under Count II, it is apparent that he is claiming damage from ERA's failure to discover the zoning problem and inform him. He is not attempting to recover rents or profits of the real property which would prompt the application of Ind.Code § 34–1–2–1. Since his action is premised upon negligence, the two year statute of limitations of Ind.Code § 34–1–2–2(1) applies.

The next question is when Craig's cause of action for negligence accrued. The closing for the subject property occurred in 1982. Craig's amended complaint containing Count II was not filed until 1986. Craig asserts his cause of action did not accrue until February 15, 1985, the date when the city notified him of the zoning violation. Craig alleges that he was not damaged until he found out about the zoning violation.

■ We hold that Craig's damage accrued on the date of closing. As our supreme court has held, "For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred." *Shideler,* 275 Ind. at 282, 417 N.E.2d at 289. Unquestionably, the alleged damage to Craig occurred on the date of closing. On that date, he obtained an interest in real property which was being used in contravention of the zoning ordinance. The zoning violation did not first occur when the city notified him in 1985. At the closing, the property's zoning was a matter of public record, easily accessible for Craig's inspection. If he had ascertained the property's zoning on that date, he would have found a present violation. Although the extent of his alleged damages were not yet known, his cause of action still accrued on

---

2. Contrary to Craig's assertions, there is nothing to indicate that the trial court relied upon the two year limitations period provided in Indiana Code section 34–4–19–1. Regardless, that stat-ute only applies to medical malpractice actions. *See Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281.

the date of closing. Thus, since his cause of action under Count II for negligence was filed more than two years after closing, the trial court correctly granted ERA's motion for partial summary judgment based upon Ind.Code § 34–1–2–2(1).

Judgment affirmed.

ROBERTSON and BUCHANAN, JJ., concur.