**AUTO–OWNERS (MUTUAL) INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Netta STROUD, Netta Stroud d/b/a Ma Stroud's Country Corner, and Randall Stroud, Defendants–Appellees.**

No. 11A01–9008–CV–337.

Court of Appeals of Indiana, First District.

Jan. 28, 1991.

Robert D. Maas, Kirk A. Horn, Jennings & Maas, Carmel, for plaintiff-appellant.

John J. Thomas, David O. Thomas, Thomas & Thomas, Brazil, for defendants-appellees.

BAKER, Judge.

Plaintiff-appellant Auto–Owners Mutual Insurance Company (Auto–Owners) appeals the trial court's award of judgment for the insured parties Netta Stroud, Randall Stroud, and Netta Stroud d/b/a Ma Stroud's Country Corner (collectively, the Strouds) in this declaratory judgment action. Auto–Owners contends trial judge Ernest E. Yelton erred in finding it has the duty to defend and indemnify the Strouds in an action pending against them for bodily injuries sustained by an eleven-year-old boy. The central question in this case is whether the Strouds' actions which injured the boy were "intended or expected," thus removing from Auto–Owners the duty to defend and indemnify the Strouds under the terms of the insurance policy. We affirm Judge Yelton's findings that the Strouds' actions were not intended or expected.

## FACTS

Netta Stroud is the owner of Ma Stroud's Country Corner, a sole proprietorship. Her son Randall was employed by the business as a butcher, cook, and general clerk. During the month of December, 1985, the business experienced three burglary attempts upon various areas of the building. On December 16, 1985, after the three attempts had occurred, Randall informed Netta that he would be spending the night in the building that night. In addition to guarding the store, Randall was going to keep heat lamps on the water pipes because they were in danger of freezing due to the extreme cold. Randall returned shortly before closing time to stay the night. Netta saw that he brought a shotgun with him into the store, but she did not discuss this with Randall.

Randall fell asleep, and was awakened at approximately 11:30 p.m. by someone attempting to enter the building through the west door by means of a bar, causing the door to bulge inward. Randall fired one shot at the door, aiming approximately a foot and one half from the bottom of the door. He then telephoned the sheriff and Netta. When the sheriff and Netta arrived, they discovered Randall's shot had struck the knee of eleven-year old Randy Foster, the would-be burglar. Another youth apparently involved in the attempted burglary was not injured.

The parents of the unsuccessful burglar filed suit against the Strouds alleging Netta and Randall were guilty of gross negligence and willful and wanton conduct in injuring their son. Auto–Owners then filed this declaratory judgment action, seeking a determination that it was not required to defend and indemnify the Strouds due to the exclusionary terms of the insurance policy. Auto–Owners' motion for summary judgment was denied, and after a bench trial, the trial court found Auto–Owners has a duty to defend and indemnify the Strouds in the action pending against them.

## DISCUSSION AND DECISION

The trial court entered special findings and conclusions of law upon Auto–Owners' motion. When the trial court has entered special findings, this court applies a two-tier standard of review. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, *trans. denied.* We first determine whether the evidence supports the findings, and then determine whether the findings support the judgment. *Id.* Special findings and the judgment flowing from the findings will be set aside only if they are clearly erroneous. *Id.;* Ind.Trial Rule 52(A). In determining whether the find-

ings and judgment are clearly erroneous, this court will neither reweigh the evidence nor judge the credibility of the witnesses. *Craig v. ERA Mark Five Realtors* (1987), Ind.App., 509 N.E.2d 1144. We consider only the evidence in the record which supports the judgment along with the reasonable inferences to be drawn from the evidence. *Id.* This court will disturb the trial court's findings only if the record is devoid of facts or inferences to support the findings. *Id.*

■ The insurance policy issued by Auto–Owners provides it will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, property damage, or personal injury caused by an occurrence to which the insurance applies. *"Occurrence* means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured....*" *Record* at 173 (emphasis in original). Auto–Owners contends the injury to the youth was intended or at least expected when Randall shot at the door knowing someone was on the other side. The Strouds counter they did not intend or expect the injury, that Randall was only attempting to scare the intruders away, and that he shot low on the door to avoid injuring anyone.

Auto–Owners challenges the trial court's findings as well as its judgment. We first turn to a determination of whether the evidence supports the trial court's findings. Auto–Owners argues the trial court's finding that Randall intended only to scare the intruder was in error. We cannot say that this finding is clearly erroneous. The trial court was in a position to observe the witnesses and judge their credibility. There was conflicting evidence; however, it is not for this court to reweigh this evidence. Randall testified that he initially aimed high on the door, but then lowered the gun and aimed low on the door and to the left because "I didn't intend to hurt anybody." *Record* at 344. The record is not devoid of facts or inferences to support the trial

court's finding, and we will thus not disturb the finding.

We next determine whether the findings support the judgment; more specifically, whether the intruder's injury was intended or expected from the standpoint of the insured. The finding that Randall was only trying to scare the intruder was supported by the evidence; however, we must evaluate the language of the insurance policy and determine whether the injury was expected or intended as a matter of law from Randall's actions. We hold that it was not, and affirm Judge Yelton's decision.

■ This court has found the phrase "intended or expected" in a similar exclusionary clause to be ambiguous. *Indiana Farmers Mutual Insurance Co. v. Graham* (1989), Ind.App., 537 N.E.2d 510, *trans. denied.* If there is ambiguity in a policy, the terms of the policy should be interpreted in a manner most favorable to the insured, and the ambiguous language is strictly construed against the insurer. *Id.* "Intended" and "expected" are not synonyms, but apply to situations in which differing degrees of proof are required. *Id.* A greater degree of proof is required to establish intent than is needed to establish expectation. *Id.* Intent may be established by showing an actual intent to injure or by showing the nature and character of the act is such that intent to cause harm must be inferred as a matter of law. *Graham, supra.* There must be an intent to cause injury, although it is not necessary that there be an intent to cause the precise injury or severity of damage that in fact occurs. *Allstate Insurance Co. v. Herman* (1990), Ind., 551 N.E.2d 844. This court has held expected injury "means that the insured acted although he was consciously aware that the harm caused by his actions was practically certain to occur." *Bolin v. State Farm Fire and Casualty Co.* (1990), Ind.App., 557 N.E.2d 1084, 1088; *Graham, supra,* at 512. The trial court concluded in this case that the injury was neither expected nor intended from the standpoint of the Strouds. We do not find this conclusion to be erroneous.

Randall was awakened by someone attempting to get into the building. He then shot at the lower portion of the door in which he believed someone was trying to enter, hoping to scare the intruder away. We do not find that an intent to harm must be inferred from these actions as a matter of law. This case is factually distinct from cases in which the injury-producing act was aimed directly at a victim. For example, in *Herman, supra,* an intent to injure was inferred from the insured's deliberate act of shooting a gun into a crowd of people. The insured fired four shots at people whom he could see fleeing his home. *Id.* In *Home Insurance Co. v. Neilsen* (1975), 165 Ind.App. 445, 332 N.E.2d 240, there was an intent to harm when the insured struck another person with his fist. In *Bolin, supra,* however, intent or expectation was not established as a matter of law. In that case, the insured shot a gun at a truck on a highway, injuring the driver. The insurance policy contained exclusionary language identical to that in the instant case. This court reversed the summary judgment in favor of the insurance company and held the nature of the insured's act was not such that harm to the truck driver must have been intended or expected as a matter of law. *Bolin, supra.* The court distinguished *Bolin* from cases where an inference of intent is permitted to be drawn from the act itself because "[i]n those cases the injury producing act was aimed directly at the victim or at another person." *Id.* at 1089. Here, Randall shot at the lower part of a door, not knowing exactly what was behind the door. He did not shoot directly at a person. In this case, Randall did not commit such an act that we must infer intent to injure as a matter of law.

Additionally, we do not find the trial court erred in finding the injury was not expected. As stated above, expected injury means injury that occurred when the insured acted even though he was consciously aware that harm was practically certain to occur from his actions. *Bolin, supra.* Considering the evidence in the record which supports the judgment, as is our duty, we cannot say Randall had a conscious awareness that an injury was practically certain to occur. We do not find the trial court's judgment to be clearly erroneous.

■ Auto–Owners also argues the injuries inflicted upon the intruder were intended or expected from the standpoint of Netta Stroud, who tacitly authorized her son Randall's acts. The trial court found the injuries were not intended or expected from Netta's standpoint, and we will not disturb that judgment. There was evidence in support of the judgment that Netta did not know the gun was loaded, she did not discuss the presence of the gun with Randall, and that she did not request Randall to spend the night at the store. There was no indication that she encouraged Randall to shoot someone who was attempting to break in the store.

Judgment affirmed.

ROBERTSON, J., concurs.

HOFFMAN, P.J., dissents with opinion.

HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent.

As the majority notes, intent may be established either by showing an actual intent to injure or by showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law. *Indiana Farmers Mut. Ins. Co. v. Graham* (1989), Ind.App., 537 N.E.2d 510, 511. The record shows that, due to a number of attempted burglaries at his mother's store, Randall went to the store with a shotgun and positioned himself near the door that had been most recently damaged. When a person or persons attempted to force open the door with a bar, Randall fired his shotgun directly at the door, striking the knee of one of the would-be burglars. In *Allstate Ins. Co. v. Herman* (1990), Ind., 551 N.E.2d 844, our Supreme Court held that, as a matter of law, when Heroy intentionally fired a gun into a fleeing crowd, of which the gunshot victim was a member, he was deliberately committing an act which any reasonable person would deem

calculated to cause injury. *Id.* at 846. Randall's intent to cause injury was similarly established as a matter of law when he fired at a door knowing someone was on the other side. Considering that Randall could have fired at the ceiling or in the floor rather than directly at the door, the trial court's conclusion that Randall intended only to scare the intruders was clearly erroneous.

Moreover, even assuming the trial court did not err in finding that Randall did not intend to cause injury, the court clearly erred in finding that he did not expect to cause injury. Expected injury means that the insured acted although he was consciously aware that the harm caused by his actions was practically certain to occur. *Graham* at 512. Randall was aware that someone was behind the door, and he fired his shotgun at the door. Reasonable persons would certainly expect injury to occur in such a situation. I would reverse the judgment of the trial court.