**INDIANA FARMERS MUTUAL INSUR-
ANCE COMPANY, Appellant
(Plaintiff Below),**

v.

**Jeffrey J. GRAHAM and Jean Graham,
Appellees (Defendants Below),**

**Mark and Debra Good, Appellees
(Intervenors Below).**

No. 25A03–8809–CV–270.

Court of Appeals of Indiana,
Third District.

April 25, 1989.

James H. Austen, Walker, Starr, Austen & Tribbett, Logansport, for appellant.

Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellees Mark and Debra Good.

HOFFMAN, Judge.

Plaintiff-appellant Indiana Farmers Mutual Insurance Company appeals a trial court decision granting summary judgment in favor of defendants and intervenors.

The facts relevant to this appeal disclose that the Grahams have a hog operation. In February 1984, the Grahams became aware that their herd had contracted pseudorabies, an infectious disease for hogs whose primary impact is felt when the disease infects breeding herds.

As a result of the infection, the Grahams' farm was quarantined. The Indiana State Board of Health regulations require vaccination, tagging, and filing various forms with the state before the infected hogs can be sold.

In order to disinfect their premises, the Grahams contacted Binkerd, a hog broker, to sell their hogs. The Grahams informed Binkerd of the quarantine and pseudorabies. Upon the request of Binkerd, Grahams did not tag the hogs. The Grahams also did not comply with the other state regulations. Grahams notified Binkerd's foreman of the infection and the quarantine when he picked up the hogs.

Binkerd resold the hogs to the intervenors, the Goods, without notice of their disease. The hogs were mixed with the Goods' breeding herd resulting in infection

and loss of the breeding herd. The Goods suffered substantial monetary damage.

The Goods sued the Grahams, individuals insured by Indiana Farmers Mutual Insurance Company. Indiana Farmers sought a declaratory judgment from the trial court that it was not obliged to provide coverage under its exclusionary clause from coverage of "property damage which is either expected or intended from the standpoint of the Insured." The trial court granted the Grahams' and Goods' Motion for Summary Judgment and denied Indiana Farmers' motion.

Indiana Farmers appeals whether the trial court was correct in finding Grahams' conduct did not fall under the exclusionary clause and granting summary judgment in favor of defendants and intervenors.

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit and testimony, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Creighton v. Caylor–Nickel Hosp., Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1305–1306.

Both parties in this case moved for summary judgment. The trial court is required to consider each motion separately construing the facts most favorably to the non-moving party in each instance. *Matter of Garden & Turf Supply Corp.* (1982), Ind.App., 440 N.E.2d 710; *Young v. City of Franklin* (1986), Ind., 494 N.E.2d 316.

When reviewing the grant of a motion for summary judgment, this Court will stand in the shoes of the trial court and consider the same matters as does the trial court. *Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154, 163. Summary judgment will be affirmed if sustainable on any theory or basis found in the record. *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 56.

The pertinent provision of the Grahams' Comprehensive Farm Liability Policy reads as follows:

"EXCLUSIONS

This policy does not apply:

Coverage A, B and C

    \*    \*    \*    \*    \*    \*

    f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

Indiana found a similar exclusionary phrase "caused intentionally by or at the direction of the insured" to be ambiguous. *Home Insurance Company v. Neilsen* (1975), Ind.App., 332 N.E.2d 240. Since three definitions of "intentionally" were urged upon the court, it held the clause was ambiguous. The court defined "caused intentionally" as an intentional act of the insured which was intended to cause injury. The latter intent may be established either by showing an actual intent to injure or by showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law. *Home Insurance Co., supra,* 332 N.E.2d at 244.

This was the standard exclusionary clause of the insurance industry prior to 1966. However, in 1966 the insurance industry undertook a major revision of the standard policy and employed the phrase "expected or intended from the Standpoint of the Insured" to achieve a similar exclusion objective.

    *See* 7A Appleman, Insurance Law and Practice (Burdal ed.), § 4491;

    *Patrons–Oxford Mut. Ins. Co. v. Dodge* (1981), Me., 426 A.2d 888, 890–891.

This revision compounded the already ambiguous nature of the exclusionary clause. Thus, the phrase "expected or intended" in the exclusionary clause is ambiguous.

The terms of an insurance policy should be interpreted most favorably to the insured if there is an ambiguity in the policy. The ambiguous language should be strictly construed against the insurer.

    *Miller v. Dilts* (1984), Ind., 463 N.E.2d 257;

    *State Security Life Ins. Co. v. Kintner* (1962), 243 Ind. 331, 185 N.E.2d 527;

*Eli Lilly and Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467.

When the insurance industry revised the exclusionary clause and added the term "expected," it was not equating "expected" and "intended" and making them synonymous. If they were to be synonymous, what purpose is served by including both within the exclusionary clause. The two words simply apply to situations which differ from each other in that a different degree of proof is required to establish intent than to establish expectation.

*Bay State Ins. Co. v. Wilson* (1983), 96 Ill.2d 487, 71 Ill.Dec. 726, 728, 451 N.E.2d 880, 882;

*Farmers Automobile Insurance Assn v. Medina* (1975), 29 Ill.App.3d 224, 329 N.E.2d 430, 436;

*Farm Bureau Town & Country Ins. Co. v. Turnbo* (1987), Mo.App., 740 S.W.2d 232, 236;

*Argento v. Village of Melrose Park* (7th Cir.1988) 838 F.2d 1483, 1497.

■ A greater degree of proof is required to establish intent than to establish expectation.

*Bay State, supra,* 451 N.E.2d at 882; *Medina, supra,* 329 N.E.2d at 436.

No damage is done to plain English or to the reasonable expectations of the insured to find a difference between "expect" and "intend" and to find this difference is simply a difference in the degree of probability. *Farm Bureau Town & Country, supra,* 740 S.W.2d at 236.

After applying the Indiana court's definition of "intentionally" to the facts of this case, it is clear that the Grahams did not "intend" the resulting damage in this case to occur. The dispute arises from whether the Grahams "expected" the resulting damage to occur. No Indiana court has defined the term "expected" as used in an insurance exclusionary clause to date. Many courts in other jurisdictions have defined "expected." *Insurance—Intended or Expected Injury,* 31 ALR4th 957, § 3[a].

■ In *Bay State,* the court stated that "expected" meant that the insured was consciously aware that the injury was practically certain to result.

*Bay State, supra,* 71 Ill.Dec. at 729, 451 N.E.2d at 883.

*See also Patrons–Oxford Mut., supra,* 426 A.2d at 892.

The court in *United Services Auto. Assn v. Elitzky* (1986), 358 Pa.Super. 362, 517 A.2d 982, found the *Bay State* decision to be persuasive and also looked to Webster's dictionary for the definition of "expected." Each definition connotes an element of conscious awareness by the insured:

"3a. to look for, specifically to anticipate the coming of.

3b. to look forward to, specifically to anticipate the occurrence of.

4a. to consider probable or certain." *Elitzky,* 517 A.2d at 991.

Contrary to the contentions of appellant, there is no evidence that the Grahams had a conscious awareness that in selling their herd to Binkerd, they were practically certain to cause harm to another. As stated previously in the facts, the Grahams did not attempt to conceal the fact that their herd was infected with pseudorabies and was quarantined.

■ There is no doubt that the Grahams were negligent. However, the Grahams' negligence is not excluded from coverage. Nothing in the definition of "expected" excludes harm that the insured "should have anticipated." Expected injury or damage means that the insured acted although he was consciously aware that the harm caused by his actions was practically certain to occur. There is no evidence that the Grahams were consciously aware that the resulting property damage was practically certain to occur when they sold their herd to Binkerd after full disclosure of the herd's infection and quarantine. The trial court correctly found that no genuine issue of material fact existed and in granting summary judgment in favor of defendants and intervenors.

Affirmed.

GARRARD, P.J., and STATON, J., concur.