Oris BOLIN, Diana Bolin, Gerald Eugene Bolin, Samuel Compton and Rockwood Insurance Company of Indiana, Appellants (Defendants Below),

v.

STATE FARM FIRE AND CASUALTY COMPANY, Appellee.

No. 49A02–8808–CV–304.

Court of Appeals of Indiana, Second District.

Aug. 8, 1990.

Robert J. Doyle, Kent O. Stewart, Stewart Due Miller & Pugh, Indianapolis, for appellants.

Michael V. Gooch, John S. Beeman, Patricia Polis McCrory, Harrison & Moberly, Indianapolis, for appellee.

SULLIVAN, Judge.

Samuel Compton (Compton) and his workers' compensation carrier, Rockwood Insurance Company of Indiana (Rockwood), appeal the decision granting summary judgment in favor of State Farm Fire and Casualty Company (State Farm).

We reverse.

The issue here concerns an insurance policy provision which excludes "bodily injury ... which is expected or intended by an insured." Record at 6.

On September 9, 1985, Compton was injured when a pellet fired from a pellet gun struck him as he was operating a tractor/trailer on Highway 66 in Warrick County, Indiana. The gun was fired by Gerald Bolin, who had earlier stolen the gun. He and some of his friends had spent the afternoon smoking marijuana and shooting first at signs, bottles, cans and tree limbs, and then a few cars and trucks. As a result of such activity, Bolin was charged with and pled guilty to criminal recklessness and conversion in Warrick County Circuit Court.

At the time of the incident, Gerald Bolin was 18 years old and resided at the home of his parents, Oris and Diana Bolin (hereinafter the Bolins). It is undisputed that Gerald was covered under his parents' homeowners' policy with State Farm. As noted, that policy excluded coverage for "bodily injury ... which is expected or intended by an insured." Record at 6.

State Farm filed a declaratory judgment action, seeking a declaration of the parties' rights under the policy and specifically requesting a finding that State Farm had no duty to defend or pay for injury or damage under this policy. The declaratory judgment named the Bolins, Gerald, and Compton as defendants. Subsequently, Rockwood Insurance Company, Compton's workers' compensation carrier, filed a petition to intervene. The petition was granted. Following extensive discovery, State Farm filed a motion for summary judgment which was granted by the trial court. Compton and Rockwood instituted this appeal, which essentially seeks to determine whether or not as a matter of law the Bolins' homeowners' policy excludes coverage of Samuel Compton's injuries.

The question necessarily produces the following avenues of inquiry:

(1) The proper interpretation of the exclusionary language of the homeowners' policy;

(2) Whether the facts which are pertinent to this interpretation are in dispute.

Summary judgment is the application of law to facts which are not in dispute. *Majd Pour v. Basic American Medical, Inc.* (1990) 2d Dist.Ind.App., 555 N.E.2d 155. In making this determination the trial court engages in a four-step process: identifying the legal issues; identifying the kind or type of facts material to the issues; identifying material facts in affidavits, depositions or other supporting materials; and,

determining if those facts are in genuine dispute. *Id.*

In the instant case the legal issue to be determined is the precise meaning of the language "expected or intended." The parties present us with authority in support of their respective positions. Briefly, appellants' position is that the term "expected" is either synonymous with "intended" or is very close to it. This contention is based upon a policy consideration that a definition of "expected" that is not equivalent to "intended" necessarily entails elements of foreseeability which are more properly found in a negligence context. Appellee urges a definition of "expected" that is not synonymous with "intended" but which excludes losses which are not uncertain or improbable, from the standpoint of the insured. Appellants' point is that appellee walks a treacherous course in trying to distinguish expected consequences from intended ones in a manner that is broad enough to encompass the consequences in the present case but yet close enough to it to avoid similarity with foreseeable consequences against which people contract to insure.

In the present case, the interpretation of "intended" in the exclusionary clause is not in dispute. Rather, the focus here is whether the addition of the term "expected" broadens the exclusionary purview of the Bolins' homeowners' insurance policy. In answering the question, we have the benefit of *Indiana Farmers Mutual Ins. Co. v. Graham* (1989) 3d Dist.Ind.App., 537 N.E.2d 510, *trans. denied.* There, the Third District construed policy language almost identical to the exclusion which is at the heart of the present case:

"This policy does not apply ... to bodily injury ... which is either expected or intended from the standpoint of the insured." *Indiana Farmers Mutual, supra,* 537 N.E.2d at 511.[1]

---

1. The Bolins' insurance policy is virtually the same with minor exceptions. One of these is that "from the standpoint of the insured" is replaced with "by an insured" in the instant case. Another minor difference is that the word "either" is not contained in the Bolins' policy. Although the argument could be made that it is

that term which allowed the Third District in *Indiana Farmers* to conclude that "expected" and "intended" were disjunctive terms, we do not find the word "either" to be determinative. It is the word "or" in the phrase "expected or intended" which renders it disjunctive.

The court used its prior decision in *Home Ins. Co. v. Neilsen* (1975) 165 Ind.App. 445, 332 N.E.2d 240, to determine that such language was ambiguous and required construction by the court. (The *Neilsen* decision had determined that policy language which contained the term "intentionally" was ambiguous.) The court in *Indiana Farmers* noted that in 1966 the insurance industry undertook a major revision of the standard policy, which contained the term "intentionally", and employed the phrase, "expected or intended from the standpoint of the insured." *Indiana Farmers, supra,* 537 N.E.2d 510, 511. The court held that this revision "compounded the already ambiguous nature of the exclusionary clause." *Id.*

The Third District also determined, however, that the addition of the term "expected" was not for the purpose of equating that term with the term "intended":

> "If they were to be synonymous, what purpose is served by including both within the exclusionary clause. The two words simply apply to situations which differ from each other in that a different degree of proof is required to establish intent than to establish expectation. (Citations omitted.) A greater degree of proof is required to establish intent than to establish expectation. (Citations omitted.) No damage is done to plain English or to the reasonable expectations of the insured to find a difference between 'expect' and 'intend' and to find this difference is simply a difference in the degree of probability." *Indiana Farmers, supra,* 537 N.E.2d at 512.

In the *Indiana Farmers* case, the owners of a hog farm became aware that their stock had become infested with an infectious disease which primarily impacts breeding herds. As a result, the hog farm was quarantined. In preparation for disinfecting their premises, the owners contacted a hog broker to sell the hogs. While the owners informed the broker of the quarantine and the disease, they requested that the broker not tag the hogs. They also did not comply with other state regulations which required vaccination, tagging and filing various forms with the state before infected hogs could be sold. They did notify the broker's foreman of the infection and the quarantine when he picked up the hogs. The broker sold the hogs to subsequent purchasers without notice of the disease. When the infected hogs were mixed with the purchasers' breeding herd, the breeding herd was subsequently infected and lost. The purchasers suffered substantial monetary damage.

The purchasers sued the hog owners, who were insured by Indiana Farmers Mutual Insurance Co. Indiana Farmers sought a declaratory judgment from the trial court that it was not obligated to provide coverage under its exclusionary clause which read: "this policy does not apply ... to bodily injury or property damage which is either expected or intended from the standpoint of the insured." 537 N.E.2d at 511. All of the parties moved for summary judgment. The trial court granted the owners' and purchasers' motions and denied Indiana Farmers' motion.

■ On appeal, the Third District held that "expected" meant that the insured was "consciously aware that the injury was practically certain to result." *Indiana Farmers, supra,* 537 N.E.2d at 512. The court determined that there was no evidence that the hog owners had a conscious awareness that in selling their hogs to the broker they were practically certain to cause harm to another:

> "There is no doubt that the Grahams were negligent. However, the Grahams' negligence is not excluded from coverage. Nothing in the definition of 'expected' excludes harm that the insured 'should have anticipated'. Expected injury or damage means that the insured acted although he was consciously aware that the harm caused by his actions was practically certain to occur." *Indiana Farmers, supra,* 537 N.E.2d at 512.

We cannot improve upon this definition of "expected" and hereby adopt it. We turn now to the question whether or not the facts in this case are undisputed that Gerald Bolin shot the pellet gun with a

conscious awareness that injury to Samuel Compton was practically certain to occur.

## II

Three primary sources of facts or inferences impact upon the question. These include a statement taken of Gerald Bolin by attorneys for State Farm on March 3, 1986; the guilty plea of Gerald Bolin to the charge of criminal recklessness; and inferences to be drawn from the act itself.

### (A) *Statement*

▉ The statement in question was taken after Gerald pled guilty to criminal recklessness and conversion charges and was sentenced to the Indiana Youth Center.[2] The part of the statement upon which State Farm places the greatest emphasis is as follows:

"Q. Had the three of you talked about the fact that you could—when you were shooting at these cars, that you could hit somebody and hurt somebody?

A. No.

Q. It was never discussed?

A. No.

Q. Did you know that that was something that could result from what you were doing?

A. Yeah.

Q. And so, you knew when you shot at Mr. Compton's truck that there was a chance that you could hurt somebody?

A. Yeah." Record at 194–195.

We agree that this statement indicates that Gerald Bolin had a conscious awareness that someone could be injured as a result of his conduct. However, the statement that there was a chance that he could hurt someone is a far cry from the definition that we adopt today: a conscious awareness that such results are practically certain to occur. We are also compelled to

point out that this statement conflicts with an earlier statement that Gerald was not aware of what he was doing because of his marijuana use. Summary judgment is inappropriate where a genuine issue of material fact exists. Ind.Trial Rule 56.

State Farm points to other factors which could support a conclusion that the injury to Compton might be expected. For example, Gerald Bolin stated that the type of pellet gun the boys were using had to be intentionally pumped up in order to shoot it, and that he did so prior to shooting at Mr. Compton's truck; that he knew it was a powerful gun, and that it was the type of gun that if you used the "sight" on it, it would hit where you aimed it. We agree that this evidence could support a conclusion that the injuries sustained by Samuel Compton could have been expected by Bolin.[3] However, they are in conflict with evidence that Bolin was not a good shot, that he aimed for the back of the truck as the truck pulled perpendicular to him, and that he was under the influence of marijuana. A court entertaining a summary judgment motion may not engage in the weighing of facts. The only role for the court is to determine whether there are material facts that are in dispute. Even if the trial court reasonably believes that the non-movant is unlikely to prevail at trial, summary judgment is not appropriate. *Majd Pour, supra.*

### (B) *Guilty Plea*

▉ State Farm also places great emphasis upon Bolin's guilty plea to criminal recklessness. Gerald Bolin was charged on September 11, 1985, with criminal recklessness while using a deadly weapon resulting in serious bodily injury, a class C felony, under I.C. 35–42–2–2(b) (Burns Code Ed. 1985). The statute with which Bolin was charged proscribes reckless, as well as knowing or intentional, conduct. I.C. 35–42–2–2. Therefore his plea cannot serve as proof that Bolin acted knowing or inten-

---

**2.** The conversion charge was based upon evidence that the pellet gun had been reported missing by the owner.

**3.** If upon remand, the trier of fact should reasonably conclude that the pellet would not have struck Compton unless it had been aimed at the open window of the cab, such would undoubtedly support a verdict for State Farm.

tionally. Bolin was charged with and in fact pled guilty to *"recklessly* commit[ting] an act"*. Record at 284. (Emphasis supplied.)

Recklessness is defined by statute as: "[Engaging] in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves the substantial deviation from acceptable standards of conduct." I.C. 35–41–2–2 (Burns Code Ed.1985).

State Farm cites *Farm Bureau Town & Country Ins. v. Turnbo* (1987) Mo.App., 740 S.W.2d 232, which held that the definition of "expected" squared with that of "reckless". This reliance is not surprising. The Missouri Court of Appeals chose to define "expected" as equivalent to "reckless", despite noting that:

"a person is reckless, if he realizes or, from the facts which he knows, should realize there is a strong probability that harm may result, even though he hopes or *expects* his conduct will prove harmless." *Turnbo, supra,* 740 S.W.2d at 235, citing Restatement (Second) of Torts § 500 (1965). (Emphasis supplied.)

We decline to follow this view. As earlier stated, we adopt the holding of our Third District that: "Expected injury ... means that the insured acted although he was consciously aware that the harm caused by his actions was practically certain to occur." *Indiana Farmers, supra,* 537 N.E.2d at 512. It is not sufficient that the insured "should have anticipated" the harm. *Id.* Such concept is descriptive of negligence. Negligence is not excluded from coverage.

The language of the policy in the present case, "expected or intended by an insured," indicates that consciousness of the likelihood of certain results occurring is determined by examination of the subjective mental state of the insured. Expectation that injury is practically certain to occur cannot as a matter of law be inferred from a plea which admits a disregard for safety. The latter speaks to the concept that the person does not care whether injury might result. That is different from an awareness that injuries are practically certain to follow.

■ State Farm cites several cases from other jurisdictions in support of its contention that Bolin's guilty plea compels the conclusion that injuries may be expected as a matter of law. We have examined these cases and find them to not be dispositive of the issue. For example, *Commercial Union Ins. Co. v. Mauldin* (1983) 62 N.C.App. 461, 303 S.E.2d 214, involved an insurance policy which excluded coverage for injury which was either expected or intended from the standpoint of the insured. The insured had pled guilty to second degree murder. He had fired four or five times into the victim's car in an attempt to shoot his wife who was also in the car. The North Carolina Court of Appeals interpreted the policy language to exclude bodily injury caused by an insured's intentional acts. The court interpreted the insured's guilty plea as an admission that he had the general intent to do the act and therefore such act was excluded from coverage under the insurance policy. We believe the appropriate focus in interpreting the policy in question is to focus upon whether the injury is expected or intended rather than whether the act itself was intended.

This approach was taken in *Bay State Ins. Co. v. Wilson* (1983) 96 Ill.2d 487, 71 Ill.Dec. 726, 451 N.E.2d 880, cited with approval in *Indiana Farmers, supra.* In *Bay State,* the insured was convicted in a bench trial of aggravated battery in the shooting death of another. In determining whether or not the conviction could conclusively establish whether the decedent's injuries were intended or expected, the Illinois Supreme Court first determined that the conviction plus the factual circumstances of the case would compel such a conclusion. The court defined the term "expected" as not synonymous with the term "intended"; rather, the court defined "expected" as a conscious awareness that the defendant's injuries were practically certain to be caused by the insured's conduct. Noting that in Illinois aggravated battery requires at a minimum knowing conduct, where knowledge is defined as

conscious awareness that a certain result is practically certain to be caused by an actor's conduct, the Illinois Supreme Court held that the insured's conviction, together with the factual circumstances in the civil case, could compel the determination as a matter of law that the insured either intended or expected to injure Wilson. The approach is a sound one. In the present case, as we have noted, the minimum culpability for criminal recklessness is not knowing conduct, but recklessness. Bolin's plea of guilty to criminal recklessness, cannot as a matter of law, compel the determination that Compton's injuries were expected or intended by Bolin. Nor does the factual basis for the guilty plea provide evidence that as a matter of law Compton's injuries were expected. The factual basis for the guilty plea does not contain conclusive evidence that would indicate as a matter of law that Gerald Bolin had a conscious awareness that in shooting at Compton's truck, injury to Compton was practically certain to result.

State Farm correctly points out that Bolin's plea is an admission as to the truth of all the elements charged. However, such admission, as noted, concerns recklessness and does not establish as a matter of law that he expected Compton's injury.

(C) *Inference from act*

The final sub-issue concerns whether the trial court could properly infer as a matter of law that Bolin expected or intended to injure Compton. The question receives a negative answer. "Intended" has been defined as a volitional act with conscious desire to bring about certain results (*see Allstate Ins. Co. v. Herman* (1990) Ind., 551 N.E.2d 844, citing *Home Ins. Co. v. Neilsen, supra*) and "expected" as a slightly broader category which includes conscious awareness that desired results are practically certain to occur. The evidence before us is that Bolin was shooting at the back of Compton's diesel truck. When asked why he was doing this he responded, "more noise, and just a lot safer." Record at 177.

This is noticeably different from cases where an inference of intent is permitted to be drawn from the act itself. In those cases the injury producing act was aimed directly at the victim or at another person. For example, in *Allstate Ins. Co. v. Herman, supra,* an intent to injure was inferred as a matter of law from the deliberate act of the insured in shooting into a crowd of people, thereby injuring the victim. In *Home Ins. Co. v. Neilsen, supra,* 332 N.E.2d 240, there was even a more direct link between the insured's act and harm to the victim. In that case the insured struck the victim in the face with his fist. The insured then attempted to argue that he did not intend to cause harm to the victim, but rather to defend himself. The court disputed this construction of events:

> "We disagree. The question of self defense is a standard of Neilsen's liability to Smolek. It presents an issue of motive or justification for an intentionally caused harm, but it does nothing to avoid the inference of intent to harm that necessarily follows the deliberate blow to Smolek's face." *Neilsen, supra,* 332 N.E.2d at 244.

These cases are to be contrasted with *Indiana Lumbermen's Mut. Ins. Co. v. Brandum* (1981) 1st Dist.Ind.App., 419 N.E.2d 246. In that case the insured deliberately rammed another vehicle driven by a man named Jamison and also containing the insured's fiancee. After being struck several times by the insured's vehicle, the Jamison vehicle left the road, struck a utility pole and landed on a third car in which Nancy Peoni and David Allen were seated. The utility pole landed on a car owned by Anna Peoni. The vehicle containing Allen and Nancy Peoni burned as did the car with Jamison and the fiancee. Jamison and the fiancee were killed. Subsequently, the insured pled guilty to two charges of involuntary manslaughter.

Lumbermen's, the insurer, initiated a declaratory judgment action arguing that it was not liable under its policy which excluded coverage for bodily injury or property damage caused intentionally by or at the direction of the insured.

With respect to intentional acts, the court, following *Home Ins. Co. v. Neilsen, supra,* held that not only must the insured's act be intentional, the insured must also have the intent to harm the party actually injured.

It agreed with the insurer's position that it was possible to infer an intent to harm the injured party from the nature of the insured's acts. However, the court again relied upon *Home Ins. Co. v. Neilsen, supra,* holding that an inference of intent may only be made "where reason mandates that from the very nature of the act, harm to the injured party must have been intended." *Indiana Lumbermen's, supra,* 419 N.E.2d at 248. Employing that rationale, the court held that the intentional act of Brandum was not excluded from coverage.

Accordingly, we hold that the trial court incorrectly determined that an inference of intent or expectation to injure Compton arose as a matter of law from Bolin's act of shooting a pellet gun at the rear of Compton's truck.[4] The nature of the act is not such that harm to Compton must have been intended or expected.

In conclusion, although the bulk of this opinion has been devoted to a discussion of the effect of adding the term "expected" to language already excluding injury intended by an insured, we note that State Farm did, in a footnote, indicate that it was likely to prevail even under existing language. As State Farm notes in that same footnote, the expected injury exclusion was emphasized because it is broader than the intentional exclusion. Because we cannot say as a matter of law that Compton's injuries were expected by Bolin, we certainly cannot say as a matter of law that they were intended.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

BUCHANAN and BAKER, JJ., concur.