Brett STOUT and Colleen Stout, Appellees–Plaintiffs/Counter–Claim Defendants,

v.

Johnny UNDERHILL, Appellee–Defendant.

Indiana Insurance Company, Appellant–Plaintiff,

v.

Brett Stout and Colleen Stout and Johnny Underhill d/b/a Uniontown Farms, Appellees–Defendants.

No. 62A01–9912–CV–426.

Court of Appeals of Indiana.

Sept. 13, 2000.

---

James D. Johnson, Rudolph, Fine, Porter & Johnson, LLP, Evansville, Indiana, Attorney for Appellant.

James A. McEntarfer, Zoercher, Huber, McEntarfer & Goffinet, Tell City, Indiana, Attorney for Appellee.

## OPINION

MATHIAS, Judge

Indiana Insurance Company ("Indiana") appeals the trial court's declaratory judgment in favor of Johnny Underhill ("Underhill"). The trial court found that Underhill's actions in shooting and injuring a trespasser leaving his property were not intentional or expected as defined by the insurance policy and thus fell within the scope of coverage of the insurance policy issued by Indiana.

We affirm.

### Facts and Procedural History

Indiana insured approximately 300 acres of land owned by Underhill in Perry County pursuant to a standard agribusiness policy. Yellow root, an herb that can be dug out of the ground and sold, grows naturally on part of Underhill's property. On August 14, 1997, Underhill caught Brett Stout and another man digging yellow root on his land. Underhill, who was carrying a shotgun, ordered the men to walk to the road, where he held them at gunpoint until

the game warden arrived. During the next two weeks, Underhill noticed that people were continuing to trespass on his land and take his yellow root.

On August 29, Underhill again caught Stout and another man digging yellow root from his land. Underhill pointed his shotgun at the men and ordered them to the road. At some point, Stout began to run for the road. From a distance of approximately 120 feet, Underhill fired three shots in the direction of Stout. According to Underhill, he did not intend to hit Stout, but rather fired the shots in the "safe zone" in front of Stout. R. at 586. However, Stout was struck and sustained injuries mainly to the lower extremities of his right side.

Stout and his wife filed a complaint against Underhill, alleging that Underhill intentionally shot Stout. Indiana intervened and filed a "Complaint for Declaratory Judgment" in which it asserted that Underhill's policy "specifically excludes coverage to Underhill based on the fact Underhill intended and expected the injury to [Stout] from firing a gun at him." R. at 108. After a bench trial, the court entered findings and conclusions in favor of Underhill.

### Discussion and Decision

At the outset, it is important to note that we are reviewing a final declaratory judgment, rather than the granting or denial of a motion for summary judgment. After trial, the trial court entered findings and conclusions pursuant to Trial Rule 52. The findings or judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses. Ind. Trial Rule 52(A); *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 972 (Ind. 1998). We do not reweigh the evidence; rather, we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind.1999) (citing *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994)).

We disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.*

The standard agribusiness insurance policy at issue in this case provided for coverage of damages resulting from "bodily injury," but contained an exclusion if the bodily injury was "expected or intended from the standpoint of the 'insured.'" R. at 87. The trial court concluded that (1) there was no evidence to support the assertion that Underhill intended to cause injury to Stout, or anyone, by firing the shotgun and (2) the expectation that injury was "practically certain to occur cannot as a matter of law be inferred from the acts of Johnny Underhill." R. at 405.

The terms "expected" and "intended" differ in that a "greater degree of proof is required to establish intent than to establish expectation." *Indiana Farmers Mutual Ins. Co. v. Graham*, 537 N.E.2d 510, 512 (Ind.Ct.App.1989), *trans. denied.* The term "expected" means the insured was "consciously aware that the injury was practically certain to result." *Bolin v. State Farm Fire & Casualty Co.*, 557 N.E.2d 1084, 1086 (Ind.Ct.App.1990) (quoting *Indiana Farmers*, 537 N.E.2d at 512). The term intentional refers to "the volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs." *Allstate Insurance Co. v. Herman*, 551 N.E.2d 844, 845 (Ind. 1990) (quoting *Home Ins. Co. v. Neilsen*, 165 Ind.App. 445, 448, 332 N.E.2d 240, 242 (1975)).

Indiana contends that the trial court erred in finding that Underhill's actions in shooting and injuring Stout were not intentional and that the injuries to Stout were not expected. Specifically, Indiana takes issue with the following two findings:

19. In Mr. Underhill firing the shotgun in the direction of Mr. Stout, Mr. Underhill aimed low and in front of

Mr. Stout, attempting to lead Mr. Stout by a safe distance.

20. By aiming low and in front of Mr. Stout, by aiming approximately 10 feet in front of Mr. Stout, Mr. Underhill was providing a safe zone at which he would shoot and not have the discharge from the shotgun strike Brett Stout.

R. at 403. Indiana argues that these findings are supported only by Underhill's "self-serving testimony" and conflict with other evidence, including that (1) Underhill was disgusted with people stealing from him; (2) Underhill fired three times and hit Stout each time; (3) shortly after the shooting Underhill told the game warden that he had "just shot someone"; and (4) on the evening of the shooting Underhill prepared a statement about the incident in which he wrote, "I knew [Stout] couldn't lie about being there if he had BBs in him." R. at 588. Underhill responds that Indiana is merely asking this Court to reweigh the evidence and judge witness credibility.

Indiana relies primarily on *Allstate Insurance Co. v. Herman,* 551 N.E.2d 844 (Ind.1990), which was an interlocutory appeal of the trial court's denial of Allstate's motion for summary judgment. In *Herman,* a fight broke out between the insured, his wife, and a group of approximately twenty to thirty people. *Id.* at 844. After someone struck his wife in the head with a baseball bat, the insured retrieved his wife's gun and fired one shot into the air. The group began running, and the insured pursued, firing four shots in the direction of the fleeing group. *Id.* According to the insured's deposition, he shot into the fleeing crowd with the intent "to hurt somebody." *Id.* at 845. The Indiana Supreme Court concluded that, by firing a gun into the fleeing crowd, the insured "deliberately commit[ted] an act that any reasonable person would deem calculated to cause injury." *Id.* at 846. The court held that the insurance company was entitled to summary judgment as a matter of law. *Id.*

Here, unlike *Herman,* Underhill's deposition testimony was not that he intended to hurt someone when he fired the shotgun, but rather that he "didn't shoot at [Stout]. Those shots should've been in the safe zone in front of him." R. at 586. Moreover, as this Court observed in *Bolin,* a "chance" that an insured could hurt someone is "a far cry from ... a conscious awareness that such results are practically certain to occur." 557 N.E.2d at 1087. Thus, although Underhill fired shots in the direction of Stout, his deposition testimony makes clear that he was not consciously aware that injury was practically certain to result. *Herman* does not control.

Rather, Underhill's case is almost identical to *Auto–Owners (Mutual) Insurance Co. v. Stroud,* 565 N.E.2d 1093 (Ind.Ct. App.1991), *trans. denied,* a more recent case of this Court. In that case, Randall Stroud, the son of a country store owner, decided to spend the night in his mother's store to keep guard against recent burglaries. He was awakened by someone trying to pry a door open, and in response fired a single shot at the door, aiming approximately a foot and one-half from the bottom of the door. The shot struck the knee of an eleven-year-old boy. The boy's parents filed suit against Randall and his mother, and the Strouds' insurer filed a declaratory judgment action contending that Randall's shooting of the boy was not covered under the "expected or intended" exclusions of the policy. After a bench trial, Judge Ernest Yelton concluded that the insurance company had a duty to defend and indemnify the claim against the Strouds. *Id.* at 1094.

Distinguishing *Herman* and other cases, we upheld Judge Yelton's judgment on appeal, observing that

[t]his case is factually distinct from cases in which the injury-producing act was aimed directly at a victim. For example, in *Herman, supra,* an intent to injure was inferred from the insured's

deliberate act of shooting a gun into a crowd of people. The insured fired four shots at people whom he could see fleeing his home.... Here, Randall shot at the lower part of a door, not knowing exactly what was behind the door. He did not shoot directly at a person. In this case, Randall did not commit such an act that we must infer intent to injure as a matter of law.

*Id.* at 1096. We also found the trial court's judgment as to whether the injury was "expected" not to be clearly erroneous. "Considering the evidence in the record which supports our judgment, as is our duty, we cannot say Randall had a conscious awareness that an injury was practically certain to occur." *Id.* at 1096.

Following *Stroud*, we must also affirm the trial court here. Indiana is essentially asking us to reweigh the evidence after a bench trial and discount the credibility of Underhill's deposition testimony. That is not our province. The trial court's findings, conclusions, and judgment are supported by admittedly conflicting evidence. As it was the trial court's responsibility to consider and weigh all the evidence presented and to assess the credibility of conflicting evidence, we cannot determine that its findings, conclusions, and judgment are clearly erroneous on the record before us.

We share Indiana's concern that our holding may allow an insured to shoot someone and then simply say, "I didn't mean to hit him," in order to obtain coverage. Currently, and under our holding in this case, the "I didn't mean to" defense is a credibility issue left to resolution by the fact finder at trial. Without question, firearms are dangerous weapons and aiming and firing a gun in the general vicinity of another person (or, as in this case, within ten feet of a person) is a dangerous act. However, we disagree with Indiana's assertion that "[a]cquisition [sic] to this conduct is tantamount to the court rewriting the policy to delete the [intentional act] exclusion and has the effect of destroying the public policy of this State to not permit insurance for intentional wrongs." Brief of Appellant at 18.

Indiana may seek transfer and ask our supreme court to hold, as a matter of law, that the "expected or intended" exclusions apply whenever an insured fires a gun in the direction of another person, regardless of the insured's subjective intent. This would represent an extension of *Herman*, and one that we are unprepared to make as an intermediate appellate court. Indeed, such a holding would seem to overrule *Stroud* and other post-*Herman* cases that have found the existence of a material fact to preclude summary judgment for an insurance company in spite of the insured's firing of a firearm in the direction of another person. *See Sans v. Monticello Ins. Co.*, 676 N.E.2d 1099, 1104 (Ind.Ct.App. 1997), *trans. denied; Bolin v. State Farm Fire & Casualty Co.*, 557 N.E.2d 1084, 1089–90 (Ind.Ct.App.1990), *trans. denied.*

Affirmed.

FRIEDLANDER, J., and NAJAM, J., concur.